# Michael Faillace & Associates, P.C.
Employment and Litigation Attorneys

110 East 59th Street, 32nd Floor
New York, New York 10022

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

faillace@employmentcompliance.com

July 17, 2008

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: JUL 21 2008

**MEMO ENDORSED**

*[Handwritten memo endorsement, dated July 21, 2008:]* P[l]directed that the matter be briefed in 3 pages. This memo is 12 single pages, and it is rejected for non-compliance. Mr. Faillace has until Friday, July 25 to submit his 3 page brief on the issue of whether his clients should be compelled to produce their tax returns. So ordered. Paul Crotty USDJ

**BY E-MAIL FILING**
Hon. Paul A. Crotty
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St., Room 735
New York, NY 10007

Re: <u>Romano, et al. v. Basilex Food Corp. et al.</u>, Index No. 07 cv 7011

Dear Judge Crotty:

We represent the Plaintiffs and write in response to Defendants' July 8, 2008 letter, seeking to compel production of Plaintiffs' tax returns. Plaintiffs further respectfully request (and counter-move herein for) for the issuance of a protective order under Fed. R. Civ. P. ("FRCP") 26 to shield Plaintiffs' (a) confidential tax information, and (b) any information concerning Plaintiffs' immigration, citizenship, or worker status. Finally, by way of argument, and in response to the Court's request at the last conference, we also set forth the relevant sections of the FLSA and NYLL statutes and regulations with regard to "tip credits" and related recordkeeping requirements.

I. **Defendants' Letter Motion is Procedurally Defective Under Local Rule 37.1**

As an initial matter, Defendants' letter motion to compel is fatally defective procedurally under Local Rule No. 37.1 of the Local Civil Rules for the United States District Court, Southern District of New York ("the moving party shall specify and quote or set forth verbatim in the motion papers what discovery request and response to which the motion or application is addressed"). Defendants' two page letter does not specify what requests are being sought with specificity, rendering their letter motion procedurally defective. At the minimum it makes the defense of the motion to compel somewhat more difficult. Further, Defendants fail to cite to any authority that would require production of the Tax Returns of Plaintiffs. Plaintiffs submit that this is because the weight of authority in this Circuit is against production in these circumstances. Indeed, this is also in violation of Local Rule 37.1 which requires that a basis be put forth. However, Plaintiffs are aware that Defendants seek to compel production of Plaintiffs' tax filings, and in all probability seek to question Plaintiffs on such filings (if any) at deposition. Plaintiffs therefore oppose Defendants' motion to compel and cross move for a protective order.

July 17, 2008                                                         Michael Faillace & Associates, P.C.
Page 2

II. **Defendants Mush Show that (1) the Tax Information Sought is Relevant, and (2) That There is a Compelling Need for the Information as the Information Sought is Not Readily Obtainable from Other Sources**

The standard for production of Plaintiffs' taxes is a heightened one when compared to the normal analysis under the Federal Rules of Evidence and the FRCP. While taxes are not privileged documents, they are given protection because of the "private nature of the sensitive information contained therein, and in part from the public interest in encouraging the filing by taxpayers of complete and accurate returns." See Smith v. Bader, 83 F.R.D. 437, 438 (S.D.N.Y.1979). Tax documents are only to be compelled when a two-prong test is met. "Tax documents should not be provided for discovery purposes unless 1) they appear relevant to the subject matter of the action, and 2) that there is a compelling need for the documents because the information contained therein is not otherwise readily obtainable." Chen v. Republic Restaurant Corp., 2008 WL 793686 at *2, 07 Civ. 3307 (S.D.N.Y. March 26, 2008) (citing Smith v. Bader, supra; Cooper v. Hallgarten & Co., 34 F.R.D. 482, 484 (S.D.N.Y.1964)); Ellis v. City of New York, 243 F.R.D. 109, 111-112 (S.D.N.Y.2007)). Plaintiffs submit that the tax returns of Plaintiffs in this instances are neither relevant to the subject matter of the action, nor does a compelling need for the documents outweigh Plaintiffs' privacy interests.

Defendants appear to argue in their July 7, 2008 letter for two separate grounds under which the tax returns of Plaintiffs should be produced. First, Defendants argue that they need the tax returns so that "defendants can discover whether the returns indicate that plaintiffs worked for any other business during the period of time they claim they worked for defendants." July 7, 2008 Letter, paragraph one. Second, Defendants raise one other reason, that "[p]laintiffs' tax returns would show how much they declared in tip income…such documentation could be used to prove that plaintiffs received such a large amount in tips that it is not believable to think that they did not receive all tips given to them by customers." Id. at paragraph 4. Neither of these two reasons provide sufficient grounds to overcome Plaintiffs' privacy concerns as they fail to "appear relevant to the subject matter of the action." However, even assuming these reasons are found to be relevant, Defendants are unable to show a "compelling need for the documents because the information contained therein is not otherwise readily obtainable." Chen, supra at *2.

Although not directly stated, Defendants appear to be making another argument by inference in their letter motion to compel. Defendants appear to be arguing that Plaintiffs did not work for them, or had employment with others during the same time period. Plaintiffs note that as alleged in the Complaint (as amended), the defendants failed to maintain detailed and specific records (or purposely falsified the records) of the plaintiff's rates of pay and hours of work for regular and overtime hours, as required by both the FLSA and NYLL, and to provide the plaintiffs with the required statement of hours, rates, wages, allowances, deductions, and net wages, especially with the requirements for taking tip credits (discussed at length infra). 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.2, 516.6; 12 N.Y. C.R.R. §§ 137.2-1. -2.2. Under these circumstances, the plaintiffs' recollection of their hours and pay is presumptively correct. Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687-88 (1946) ("where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes . . . we

July 17, 2008                            Michael Faillace & Associates, P.C.
Page 3

hold that an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference."); Reich v. Southern New England Telecommunications Corp., 121 F.3d 58, 66 (2d Cir. 1997) (when a defendant in a suit for unpaid wages under FLSA fails to maintain such employment records, an employee may "submit sufficient evidence from which violations of the [FLSA] and the amount of an award may be reasonably inferred"). Plaintiffs' recollections of their working periods, in the absence of sufficient records maintained by defendants are presumptively correct. Defendants may not turn their complete lack of records (prior to their use of "Paychecx, Inc." to distribute checks) against Plaintiffs in the hopes of compelling production of Plaintiffs' tax filings, or as Plaintiffs anticipate they will argue, attempting to limit the Plaintiffs' damages to the time period for which Defendants maintained payment records (Plaintiffs, in any event, believe these records are inaccurate and insufficient, discussed infra). Plaintiffs submit that this makes sense, as otherwise, Defendants in every FLSA and NYLL matter would be able to benefit from their own misconduct, and would not maintain employment records and then demand that Plaintiffs provide proof of their employment.

### III. Defendants Argument Regarding Plaintiffs' Income from Other Businesses Is Insufficient to Compel Production of the Tax Returns of Plaintiffs

First, Defendants assert that they are entitled to the tax returns of Plaintiffs because Plaintiffs *might* have reported income on their returns showing that plaintiffs worked for other business during the period of time they claim to have worked for defendants. This argument fails to meet the initial relevance prong. At issue in the present matter is whether statutory violations occurred with respect to Plaintiffs' employment with *Defendants*, not what other employers may have paid them.[1] What Plaintiffs indicated on their returns (if anything) about other employers (if any) has nothing to do with the present action, which is to recover *inter alia* compensation and overtime from *Defendants*. Therefore, plaintiffs submit that Defendants are unable to show relevance on these grounds. See e.g. Chen, supra at *2.

Even assuming *arguendo* that the Plaintiffs' tax returns are relevant because they may show income from other employers, Defendants are unable to show that Plaintiffs' privacy concerns are outweighed by a "compelling need" for the documents "because the information contained therein is not otherwise readily obtainable." Chen, supra. First, Defendants have already elicited sworn interrogatory responses form Plaintiffs on precisely this topic:

> *Request No. 8*
> *State whether any plaintiffs worked, either as an employee or independent contractor, for anyone other than defendants during any week such plaintiff was employed by defendants. If yes, state which plaintiffs so worked, the dates of each such week; and of those weeks, state the specific dates and hours each such plaintiff so worked.*

---

[1] As noted later herein, Plaintiffs have already submitted sworn interrogatory responses to Defendants indicating that they did not work for any other employers during the relevant time period.

July 17, 2008                                                                Michael Faillace & Associates, P.C.
Page 4

See Defendants' First Combined Request for Production. Plaintiffs responded in relevant part, after raising objections, with the following:

> *Subject to and without waiving the foregoing General Objections and Specific Objections,* ***Plaintiffs state that they were not employed by any other employer during the weeks that they were employed by Defendants*.**

See Plaintiffs' Responses and Objections to Defendants' First Combined Request. Therefore, this information has already been obtained by interrogatory, and Defendants cannot now complain that this information is not available from any source but Plaintiffs' tax returns. Plaintiffs also submit that a protective order is appropriate under Rule FRCP 26(b)(2)(C)(i-iii) for reason that this is requested discovery is "(i)…unreasonably cumulative or duplicative…[and], (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action…. FRCP 26(b)(2)(C)(in relevant part).

      Plaintiffs also point out that there are other means of requesting the information that are far less intrusive than the disclosure of Plaintiffs tax filings. For example, document requests seeking pay stubs and W2s from other employers, interrogatories, and depositions can all be brought to obtain precisely this information (although Plaintiffs would battle production of these on the grounds of *inter alia* relevance). Defendants chose to use an interrogatory in advance of deposing Plaintiffs. Plaintiffs answered and verified their responses this interrogatory. As such, Defendants can show no "compelling need" for Plaintiffs' tax returns that outweighs Plaintiffs' privacy interests because the information can be obtained from other "less invasive sources," and indeed, already was.

      Plaintiffs submit that the motion to compel on this basis should be denied as (1) Plaintiffs have already provided this information in interrogatory responses, (2) Defendants have not met their burden for production of tax information as this information is neither "relevant" nor is there a "compelling reason" that outweighs the privacy interests involved, and (3) this appears to be in essence an attempt to harass the Plaintiffs and otherwise intimidate them (discussed below).

IV.      **Defendants Argument Regarding the Use of Plaintiffs' Tax Records In Order to Show Tip Income Is Insufficient to Compel Production**

      Defendants next assert that Plaintiffs' taxes should be produced because they might show tip income reported by Plaintiffs. However, Defendants' second argument also fails to show how Plaintiffs' taxes are relevant to the inquiry. What is at issue in this matter is not the amount of tip income reported on Plaintiffs' tax filings, but issues such as (1) whether Defendants appropriately notified Plaintiffs that tip credits were being taken (2) the nature and adequacy of Defendants' statutorily required tip credit records, (3) whether Plaintiffs received sufficient amounts in tips to qualify (which much be proved through Defendants' records), (4) whether Plaintiffs were truly qualified as the type of employee for which wage reduction could be taken for <u>all hours worked</u>, and (5) what amounts Defendants <u>failed to pay</u> in improperly confiscated tips to show damages to Plaintiffs.

July 17, 2008                                                        Michael Faillace & Associates, P.C.
Page 5

Plaintiffs allege, amongst other things, that Defendants failed to notify them that they were reducing their wages below minimum wage by taking a tip credit (as required in both the FLSA and NYLL). Plaintiffs further allege that they had portions of their tips misappropriated (through, for example, Defendants' confiscation of tips paid through the "Seamless Web" online food orders). In addition, Plaintiffs allege they only worked part of the time as delivery personnel, doing may other types of work during the day. Plaintiffs also allege that Defendants failed to maintain adequate records as required to take the tip credits under either the FLSA or NYLL. See Complaint, generally (as amended).

How much tip was credited and/or deducted from Plaintiffs' wages in Defendants' records may be relevant information, but tax filings of the Plaintiffs (unlike the tax filings of the Defendants) are not relevant to this action because at best they only indicate what Plaintiffs may have reported, and are too remote to the issues at hand. This is especially true as Defendants will either (1) be forced produce sufficiently accurate and complete tip credit records as required to take the tip credit (which will include detailed accounting of the tips), or (2) *Defendants cannot claim the credit because they did not maintain the appropriate records which are a pre-requisite to taking the tip credit*.

### A.   **FLSA Tip Credit Requirements**

29 U.S.C. 203(t) defines a "tipped employee" as "any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." 29 U.S.C. 203(t). In addition, Section 203(m) of the definitions section of the FLSA defines "wages" by making an allowance for taking a tip credit to reduce an employees wages below that otherwise required by the minimum wage act. See 29 U.S.C. 203(m).

> In determining the wage an employer is required to pay a tipped employee, the amount paid such employee by the employee's employer shall be an amount equal to—
>
> (1)   the cash wage paid such employee which for purposes of such determination shall be not less than the cash wage required to be paid such an employee on August 20, 1996; and
>
> (2)   an additional amount on account of the tips received by such employee which amount is equal to the difference between the wage specified in paragraph (1) and the wage in effect under section 206 (a)(1) of this title.
>
> The additional amount on account of tips may not exceed the value of the tips actually received by an employee. The preceding 2 sentences shall not apply with respect to any tipped employee *unless such employee has been informed by the employer of the provisions of this subsection, and all tips received by such employee have been retained by the employee*, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips.

July 17, 2008  Michael Faillace & Associates, P.C.
Page 6

29 U.S.C. 3(m) (definition of "wage") (emphasis added). Therefore, in order for Defendants to reduce Plaintiffs' wages below the minimum wage, defendants must strictly comply with the language of 3(m) of the FLSA and provide "notice" to Plaintiffs of the provisions of 29 U.S.C. 203(m). Further, the employees must be allowed to retain all of the tips received.

> Under federal law, an employer is eligible for this "tip credit" if (1) the employer has informed the tipped employee of statutory requirements related to the tip credit; and (2) "all tips received by such employee have been retained by the employee... These requirements should be "strictly construed, and must be satisfied even if the employees received tips at least equivalent to the minimum wage. Thus, and employer may not take a tip credit unless it complies strictly with both statutory requirements.

Chan v. Sung Yue Tung Corp., 2007 WL 313483 at *17, 12 Wage & Hour Cas.2d (BNA) 507, (S.D.N.Y. Feb. 1, 2007) (internal citations omitted) (quoting New Silver Palace Rest., Inc., 246 F. Supp.2d 220, 228-9 (S.D.N.Y. 2002)). "If the employer cannot show that it has informed employees that tips are being credited against their wages, then no tip credit can be taken and the employer is liable for the fill minimum wage." Reich v. Chez Robert, Inc., 28 F.3d 401, 403 (3d Cir. 1994) (quoted in Chan v. Sung Yue Tung Corp., supra, at *18) (Employers bear the burden of showing they have satisfied this requirement for example "providing employees with a copy of § 203(m) and informing them that their tips will be used as a credit"). See also Richard v. Marriott Corp., 549 F.2d 303, 305 (4th Cir. 1977), cert denied 433 U.S. 915, 97 S.Ct. 2988 (1977) ("the corollary seems obvious and unavoidable: if the employer does not follow the command of the statute, he gets no credit").

### B. In Order to Take the FLSA Tip Credit, Defendants Must Maintain Records Showing the Same Tip Payment Information That Defendants Proffer As the Reason to Compel Production of Plaintiffs' Tax Returns

Defendants are specifically required by the FLSA to maintain records of tip payments under the FLSA (if they wish to take the deduction) by 29 C.F.R. 516.28 and 29 C.F.R. 516.2. See 29 C.F.R. 516.2 (generally), and 516.28 (set forth below in relevant part). The recordkeeping requirements for tipped employees necessary for Defendants to reduce Plaintiffs' wages below the minimum wage would clearly cover the information Defendants are now seeking to obtain from Plaintiffs' taxes.

> Sec. 516.28 Tipped employees.
>
> (a) With respect to each tipped employee whose wages are determined pursuant to section 3(m) of the Act, the employer shall maintain and preserve payroll or other records containing all the information and data required in Sec. 516.2(a) and, in addition, the following:
>
>> (1) A symbol, letter or other notation placed on the pay records identifying each employee whose wage is determined in part by tips.

July 17, 2008                                                      Michael Faillace & Associates, P.C.
Page 7

>(2) Weekly or monthly amount reported by the employee, to the employer, of tips received (this may consist of reports made by the employees to the employer on IRS Form 4070).
>
>(3) Amount by which the wages of each tipped employee have been deemed to be increased by tips as determined by the employer (not in excess of 40 percent of the applicable statutory minimum wage). The amount per hour which the employer takes as a tip credit shall be reported to the employee in writing each time it is changed from the amount per hour taken in the preceding week.
>
>(4) Hours worked each workday in any occupation in which the employee does not receive tips, and total daily or weekly straight-time payment made by the employer for such hours.
>
>(5) Hours worked each workday in occupations in which the employee receives tips, and total daily or weekly straight-time earnings for such hours.

29 CFR 516.28 (in relevant part).

Plaintiffs first filed their Complaint, and Defendants joined issue in August of 2007. Defendants are required to maintain these records for a minimum of two years under 29 U.S.C. 516.6(c) (2 year minimum requirement for records pertaining to any wage deductions / credits, and 3 years are required for other records, such as payroll records, under 29 U.S.C. 516.5). Therefore, Defendants' own records containing this tip information should at least be available under the FLSA for Plaintiffs dating back to August of 2005, and some for August of 2004.

Notably, Plaintiffs have not received any records that would qualify under the FLSA regulations in Defendants' document production to date. Rather, what Defendants have produced are records of what was paid to Plaintiffs by check from "Paychex, Inc." (for a portion of the employment period in question), which only shows the amount of tip credit purportedly placed on the Paychex, Inc.'s records. The amount indicated on the Paychex, Inc. records and Plaintiffs' pay stubs for tips per week show a round number that often did not change from week to week, and in fact seems to be a flat weekly amount Plaintiffs submit was concocted to create the illusion of compliance. (e.g. Plaintiffs' document production 0001-4, showing a few of Plaintiff check stubs in 2006 and 2007, containing a "tip" amount credited by Defendants for Plaintiff Vincente E. Pablo of $250, $275, $250, and $250 for 4 different weekly pay periods.) Nowhere is there any accounting of the tip amounts *actually received* by Plaintiffs. Nowhere are any internal records setting forth any accounting of tips received through the "Seamless Web" accounts. There is no indication or symbol designating the employee as a tipped employee. Further, there is no accounting of hours spent by Plaintiffs doing other tasks than delivery work for which they should be paid a straight wage (as required in 29 CFR 516.28(4). In addition, there were no IRS Form 4070s produced in response to Plaintiffs' requests by Defendants (which should have been produced if existent). Without these, it is hard to see how Defendants intend to establish the prerequisite records for taking the tip credit.

July 17, 2008                                               Michael Faillace & Associates, P.C.
Page 8

Defendants either must proffer tip credit records or no tip credit may be taken. "[W]hen the employer fails to follow the record-keeping requirements of the Act [specifically referring to FLSA tip provisions and 29 C.F.R. 516.28], 'the penalty for such an omission must fall upon the employer and not upon his employees." Cuevas v. Bill Tsagalis, Inc., 149 Ill.App.3d 977, 988, 500 N.E.2d 1047, 1055, 27 Wage & Hour Case. (BNA) 1713 (App. Ct. IL, 2nd Dist. 1986) (quoting Bingham v. Airport Limousine Service, 314 F.Supp 565, 572 (W.D.Ark. 1970).

> The Defendants violated 29 C.F.R. section 516.28 in that they did not maintain and preserve the following additional records for tipped employees: Amount by which the wages of each tipped employee have been deemed to be increased by tips as determined by the employer ... *260 The amount per hour which the employer takes as a tip credit shall be reported to the employee in writing each time it is changed from the amount per hour taken in the preceding week ... Hours worked each workday in occupations in which the employee receives tips, and total daily or weekly straight-time earnings for such hours. ...The Defendants did not make their employees aware of this tip credit. They neither told their employees nor showed the tip credit amount on the employees' pay stub.

Reich v. Cole Enterprises, Inc., 901 F.Supp. 255 (S.D.Ohio,1993) See also Brennan v. Ledet, 1974 WL 1088, 21 Wage & Hour Cas. (BNA) 1081, 73 Lab.Cas. P 33,053 (E.D.La. March 1, 1974) ("defendants were not keeping the records require by 29 CFR § 516.28 and cannot show that these were tipped employees within the meaning of section 3(t)."). Therefore, even assuming *arguendo* that the documents are relevant, Defendants cannot establish a compelling need for the tax returns to overcome Plaintiffs' privacy interests, as Defendants' own records (if existent) are the best records available, and if these records do not exist, Defendants' ability to raise the tip credit as a defense to the minimum wage law evaporates.[2]

### C.     The New York Labor Law Contains Parallel Requirements

The New York Labor Law, although somewhat different in its wording and application, contains similar requirements and provisions with respect to tip credits. New York Labor Law § 652(1). Tip credits are allowed under NYLL 652(4) and NYCRR 12§ 137-1.4. The NYLL "prohibits [employers] form retaining for themselves any portion of employees' tips, regardless of whether the employer takes a tip credit. See Chan v. Sung Yue Tung Corp, supra at *17 (citing NYLL §196(d)). The prerequisites for taking a tip credit are set forth in part below:

§ 137-1.4 Tip allowance for service employees.

(a) Allowance for tips shall not exceed:
    (1) On and after March 31, 2000, $1.15 an hour for an employee whose average of tips received is between $1.15 and $1.65 per hour; $1.65 per hour for an employee whose average tips received is $1.65 per hour or more;

---

[2] In addition, some of the documents containing the information that Defendants deem necessary to their case (tip payments), and which form the second basis for Defendants' current motion to compel, were ordered to be produced by this Court as a result of Plaintiffs' motion to compel in the June 26, 2008 Order ("Seamless Web" accounts).

July 17, 2008                                                      Michael Faillace & Associates, P.C.
Page 9

        (2) On and after January 1, 2005, $1.35 an hour for an employee whose average of tips received is between $1.35 and $1.90 per hour; $1.90 per hour for an employee whose average of tips received is $1.90 per hour or more;
        (3) On and after January 1, 2006, $1.50 an hour for an employee whose average of tips received is between $1.50 and $2.15 per hour; $2.15 per hour for an employee whose average of tips received is $2.15 per hour or more;
        (4) On and after January 1, 2007, $1.60 an hour for an employee whose average of tips received is between $1.60 and $2.30 per hour; $2.30 per hour for an employee whose average of tips received is $2.30 per hour or more;

(b) No allowance for tips or gratuities shall be permitted for an employee whose weekly average of tips is less than:
        (1) $1.15 per hour on and after March 31, 2000;
        (2) $1.35 per hour on and after January 1, 2005;
        (3) $1.50 per hour on and after January 1, 2006; and
        (4) $1.60 per hour on and after January 1, 2007.

12 NYCRR §137. Defendants therefore must establish the above information to take the credit. It is therefore axiomatic that records indicating the amount of tips are necessary to show compliance with these provisions.

    Further, Defendants' recordkeeping requirements under the FLSA are paralleled and surpassed under the NYLL. We believe that defendants are not entitled to any tip credit because Defendants did not do the required record keeping under the NYLL which would entitle them to any tip credit. See e.g. 12 N.Y.C.R.R. §§ 137-2.1, 2.2 (setting forth required recordkeeping and required statements to employees indicating exact amount of tip allowance); 137 – 3.3(e) (placing the burden on the employer to establish that the tip credit should be applied). Defendants further failed to indicate on the employee paystubs an accurate amount of tip deductions being taken. For the period of time that Defendants have provided records, they are inaccurate, as Plaintiffs submit that a flat round number of "tips" for a set amount per week is astronomically unlikely to occur, given the variation in tips received from each customer. Therefore Defendants are running afoul of the recordkeeping requirement under the NYLL, and regulations promulgated under the NYLL, requiring that the tip amounts be accurately communicated to employees on their paystubs. 12 NYCRR § 137-2.2 ("Statement to employee. Every employer covered by this Part shall furnish to each employee a statement with every payment of wages listing hours worked, rates paid, gross wages, allowances, if any, claimed as part of the minimum wage, deductions and net wages.")

    The NYLL similarly requires employers to post notice and inform employees of the tip credit regulations. See NYLL 198-d (requires posting in a conspicuous place "any regulations promulgated pursuant thereto relating to illegal deductions from wages and tips by employers"). Similar provisions exist with respect to the minimum wage requirements under the NYLL. See e.g. NYLL § 661. Therefore, the same posting requirements that Plaintiffs submit are fatal to Defendants' defense under the FLSA are present under the NYLL.

July 17, 2008                                                   Michael Faillace & Associates, P.C.
Page 10

In addition, Plaintiffs allege Defendants employed them as dual employees, having them perform many other tasks in addition to simply doing delivery work. This would remove them from the "Service Employee" status, vitiate any tip credit for hours not performed under "Service Employee" status, and Defendants would have to pay them on a flat rate under the minimum wage order for all hours.

> § 137-3.3 Service employee and nonservice employee.
> (a) A service employee is an employee who customarily receives tips at the rate of:
> (1) $1.15 or more per hour on and after March 31, 2000;
> (2) $1.35 or more per hour on and after January 1, 2005;
> (3) $1.50 or more per hour on and after January 1, 2006; and
> (4) $1.60 or more per hour on and after January 1, 2007.
>
> (b) A nonservice employee is any employee other than a service employee.
>
> (c) Classification as a service employee or as a nonservice employee shall be on a weekly basis except that an employee may not be classified as a service employee on any day in such week in which he has been assigned to work in an occupation in which tips are not customarily received.
>
> (d) The employer shall have the burden of proof that an employee receives sufficient tips to entitle such employer to classify such employee as a service employee

12 N.Y.C.R.R. § 137.3.3. Defendants, given the records produced to Plaintiffs, cannot meet the standards set forth in the NYLL and its regulations. Here, there is no record of tip income reported to allow Defendants to justify paying Plaintiffs as "Service employees" and since every day (according to Plaintiffs' Complaint as amended) Plaintiffs worked for at least several hours "in an occupation in which tips are not customarily received" doing non-delivery tasks, plaintiffs submit Defendants cannot take the credit. Id. The burden is on the employer to justify taking the tip credit, and without the records they cannot. See 12 N.Y.C.R.R. 137-3.3(d). "Because New York law imposes an even higher recordkeeping burden on employers, a finding of FLSA liability necessarily implies a finding of liability under New York Law." See Chan v. Sung Yue Tung Corp, supra at *24 (citing Doo Nam Yang, 427 F.Supp.2d at 337) (declaring Defendants' recordkeeping insufficient under either the FLSA or the NYLL and finding therefore that Plaintiffs' recollections of tips and records is presumptively correct for calculating damages). Therefore, the same problem exists for Defendants, and perhaps even more so, under the six years covered by the NYLL. If Defendants wish to take the tip credit, and even if not, they are required to maintain records that will be far more relevant to the claims at issue herein that Plaintiffs' tax information. If these records do not exist, neither does the affirmative defense, and Defendants are simply harassing Plaintiffs in attempting to compel production of their taxes.

### D. Defendants Arguments to Compel the Taxes of Plaintiffs are Unavailing

As such, Defendants in making this motion to compel Plaintiffs' tax returns to show tip payments have placed themselves in an odd Catch-22. Indeed, if they do not maintain these

July 17, 2008                                                Michael Faillace & Associates, P.C.
Page 11

records, they may not take the tip credit. If they do maintain the records, the motion to compel fails because Defendants' own records are available. Plaintiffs' tax returns are simply of no moment to this inquiry, as they can only show what Plaintiffs may have been reported on tax returns. Therefore, the tax returns are neither relevant nor is there a compelling need to produce them sufficient to outweigh Plaintiffs' privacy interests.

### V.  Plaintiffs Seek A Protective Order Prohibiting Further Inquiry Into Plaintiffs Tax Returns or Filings Or Inquiries Concerning Immigration Status of Plaintiffs

Plaintiffs submit that a protective order under FRCP 26(c) should issue from this Court preventing Defendants from seeking further disclosure about Plaintiffs' tax filings, or asking questions in deposition concerning Plaintiffs' tax filings. Defendants' tactics appear in part to be motivated by harassment of Plaintiffs, as no relevance can truly be attached to Plaintiffs tax returns (see above for arguments). In the alternative, the relevance of Plaintiffs' tax filings is outweighed by the intrusive nature of the request, Defendants' inability to provide a compelling reason for their production, and the harassing and intimidating nature of the request. Although Plaintiffs neither confirm nor deny (at present) whether they filed taxes or whether they have appropriate worker's status to work in the United States, such information is irrelevant to the proceedings at hand. See e.g. Chan v. Sung Yue Yung Corp., supra at *10 ([In FLSA and NYLL matter] "Numerous Plaintiffs who testified were impeached in a variety of ways. Several acknowledged having violated tax or immigration laws, or were shown to have done so. The Court gives such information little weight..."). Further, Plaintiffs anticipate that any questions at deposition concerning Plaintiffs' tax filings will be designed to intimidate or harass Plaintiffs, under the guise that Defendants wish to attack the veracity of Plaintiffs and therefore their credibility. See also Rengifo v. Erevos Enterprises, Inc., 2007 WL 894376, 06-cv-4266(SHS)(RLE)(S.D.N.Y. March 20, 2007) ("good cause" was shown for the purposes of issuing a protective order to shield any questioning concerning immigration issues under FRCP 26(c), as question of immigration in FLSA matter status only goes at most to a collateral issue, and probative value was far outweighed by concerns regarding damage that could be caused by immigration disclosures.)

Notably, Plaintiffs raised this issue with opposing counsel, and specifically objected to both these avenues of inquiry in their document responses and interrogatory responses. Plaintiffs did raise the following in their general objections. See e.g. Plaintiff's General Objections Nos. 11 and 13, below:

> 11. Plaintiff generally objects to the Requests to the extent that they seek information that is protected by Plaintiff's right to financial privacy and/or seek information that may be protected by the right to privacy recognized under the United States Constitution, or any other applicable law. Any such information which is otherwise non-privileged and relevant to the subject matter of this litigation which may reasonably be calculated to the discovery of admissible evidence will be produced subject to the execution of a mutually acceptable confidentiality agreement.

July 17, 2008                                                           Michael Faillace & Associates, P.C.
Page 12

     13. **OBJECTION TO INFORMATION CONCERNING IMMIGRATION STATUS.**
Plaintiffs object to the production of any document concerning their immigration status, or other documents which touch upon Plaintiffs' immigration status, as unduly intimidating, harassing, and lacking in relative probative value. Plaintiffs will seek an appropriate protective order from the Court should the parties be unable to reach an agreement concerning this categorical objection.

Plaintiffs therefore similarly request relief from Defendants Requests No. 15 ("*For each plaintiff, state his or her social security number*"), Nos. 16-18 (tax returns and future tax filings). These requests are intimidating and unduly harassing to employee plaintiffs whose immigration status and tax filings are not sufficiently relevant under the FLSA and NYLL matters at issue in this case. See e.g. Rengifo v. Erevos, supra.

     In addition, Plaintiffs will (only if necessary) raise additional 5th Amendment protection to shield the production (or other disclosure concerning) their tax filing information and/or immigration / work status should it become necessary. However, at the present time, Plaintiffs believe that they have established the need for a protective order, and Defendants have utterly failed to demonstrate the relevance of the documents they seek to compel. Therefore, this defense is held in abeyance unless there is a necessity to raise it. See e.g. Chen supra (Plaintiffs' tax returns shielded from production and motion to compel in order to protect FLSA plaintiffs' privacy interests, so court declined to reach 5th Amendment protection issues involved).

**VI.**    **Conclusion**

     Plaintiffs therefore respectfully submit that Defendants have failed to meet their burden with respect to showing either the relevance of Plaintiffs' tax returns or filings, or show any compelling reason necessary to justify their production over Plaintiffs' privacy concerns. Plaintiffs further submit that Defendants failed to set forth the requests and grounds for the motion with specificity as required under Local Rule 37.1. As such, their motion to compel should be denied in its entirety. Further, Plaintiffs respectfully request the issuance of an appropriate protective order prohibiting Defendants from inquiring further by way of deposition, or otherwise, into the tax filings of plaintiffs, the immigration status of defendants, or any avenues of questioning touching upon those topics as harassing, intimidating and not sufficiently relevant to justify the discovery. Plaintiffs further request all such other relief that this Court may deem just and appropriate under the circumstances.

                                                                         Respectfully Submitted,

                                                                         Michael A. Faillace

cc:     Arthur Harvey Forman, Esq. (BY E-MAIL)
        98-20 Metropolitan Avenue
        Forest Hills, NY 11375